**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHRISTINE RODRIGUEZ and AMBER MICH, on behalf of themselves and all others similarly situated, | Case No. 1:21-cv-2081 |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **<u>JURY TRIAL DEMANDED</u>** |
| EXAMITY, INC., | Honorable Franklin Valderrama |
| Defendant. | |

Christine Rodriguez and Amber Mich ("Plaintiffs"), on behalf of themselves and all other persons similarly situated, by and through their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.      This is a class action suit brought against Defendant Examity Inc. ("Examity" or "Defendant") for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. Defendant develops, owns, and operates an eponymous online proctoring software that collects biometric information.

2.      Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in collecting, storing, and using their and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (referred to

---

[1] "Biometric identifier[s]" include fingerprints, voiceprints, iris scans, and face geometry, among other things.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

collectively at times as "biometric data"). Defendant failed to provide the requisite data retention and destruction policies, and failed to procure Plaintiffs' consent before it collected, captured, or otherwise obtained Plaintiffs' biometric data.

3.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

4.     In recognition of these concerns, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant that possesses biometric data must inform individuals in writing of the specific purpose and length of term for which such biometric identifiers or biometric information are being collected, stored, and used. 740 ILCS 14/15(b).

5.     Moreover, entities collecting biometric data must publish publicly available written retention schedules and guidelines for permanently destroying biometric data collected. *See* 740 ILCS 14/15(a).

6.     In direct violation of §§ 15(a) and 15(b) of BIPA, Defendant collected, stored, and used—without first publishing a biometric data retention and deletion policy and without obtaining informed written consent—the biometric data of hundreds or thousands of students who used Defendant's software to take online exams.

7.     Plaintiffs are students who used Examity. During Plaintiffs' use of the software, Examity collected their biometric data, including their facial geometry, eye movements, and facial features and expressions.

8.      Defendant failed to develop a written policy establishing a retention schedule and guidelines specifying how long it will retain biometric data, or when it will delete such information.  On information and belief, Defendant has not, and will not, destroy biometric data when the initial purpose for collecting or obtaining such data has been satisfied.

9.      Defendant also failed to obtain written consent from Plaintiffs to collect, capture, or otherwise obtain Plaintiffs' biometric data, including but not limited to by failing to inform Plaintiffs of the specific purpose and length of term which the biometric data will be collected, stored, and used.

10.     BIPA confers on Plaintiffs and all other similarly situated Illinois residents a right to know of the risks that are inherently presented by the collection and storage of biometric data, and a right to know how long such risks will persist after ceasing using Defendant's software.

11.     Yet, Defendant failed to provide sufficient data retention or destruction policies to Plaintiffs or the Classes, or obtain their informed written consent before collecting their biometric data.

12.     Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's improper and lackluster collection, storage, and protection of these individuals' biometric data in violation of BIPA.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

14.     This Court has personal jurisdiction over Defendant because the biometric data collected and which give rise to this lawsuit (1) belonged to Illinois residents, and (2) were collected by Defendant in Illinois or from students taking exams in Illinois.

15.     Plaintiffs' injuries also arise out of or are related to Defendant's business activities in Illinois.  Defendant contracts with a variety of Illinois-based schools and entities to proctor exams, wherein it collects the biometric data of the students of these institutions, including Plaintiff Rodriguez and Plaintiff Mich.  These Illinois-based schools and entities include, but are not limited to: Olivet Nazarene University, Northwestern University, DePaul University, University of Illinois Springfield, Northern Illinois University, Loyola University Chicago, Illinois Institute of Technology, Lake Land College, Illinois Central College, Illinois Valley Community College, and Joliet Junior College.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiffs' biometric data was collected in this District.

## PARTIES

17.     Plaintiff Christine Rodriguez is, and has been at all relevant times, a resident of Algonquin, Illinois and has an intent to remain there, and is therefore a domiciliary and citizen of Illinois.

18.     Plaintiff Amber Mich is, and has been at all relevant times, a resident of Chicago, Illinois and has an intent to remain there, and is therefore a domiciliary and citizen of Illinois.

19.     Defendant Examity, Inc. is a Delaware corporation with its principal place of business at 135 Needham Street, Newton, Massachusetts 02464.  Defendant develops, owns, and

operates an online proctoring software that is used throughout Illinois.

## FACTUAL BACKGROUND

### I.    Illinois' Biometric Information Privacy Act

20.    The use of a biometric scanning system entails serious risks.  Unlike other methods of identification, facial geometry is a permanent, unique biometric identifier associated with an individual. This exposes individuals to serious and irreversible privacy risks.  For example, if a device or database containing individuals' facial geometry data is hacked, breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

21.    Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as facial geometry. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276.

22.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b) (emphasis added).

23.    Further, BIPA requires that a private entity in possession of biometric data:

must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

24.     As alleged below, Defendant violated § 15(a) of BIPA by failing to establish a proper deletion schedule for biometric data, and §15(b) by failing to obtain a written release from the individuals authorizing the collection of their biometric data and by failing to inform individuals of the complete purposes for which it collects their sensitive biometric data.

25.     Moreover, and upon information and belief, because Defendant has failed to specify the length of time it retains biometric data, the only reasonable conclusion is that Defendant has not, and will not, destroy biometric data when the initial purpose for collecting or obtaining such data has been satisfied.

## II.     Defendant Violates Illinois' Biometric Information Privacy Act

26.     Defendant is one of the fastest-growing online-proctoring services and employs over a thousand people.  Defendant doubled in size between 2018 and 2019, and it was named the fastest-growing ed-tech company in North America by Deloitte's Fast 500. At the beginning of 2019, the company estimated that it would proctor over 2 million exams for higher education alone.

27.     One of the ways in which Examity monitors students is by capturing and collecting their facial geometry.  According to Examity's website, Examity offers both auto and live proctoring.

28.     For auto proctoring, Examity offers both a "standard" and "premium" version.  As further explained, both versions implicate BIPA through two distinct mechanisms: "auto authentication" and its "automated proctoring technology."

29.    For the standard auto proctoring, Examity begins with a "comprehensive auto authentication," which compares a "real-time image" with the "test-taker's ID on file" to identify the test taker.  After auto authentication, Examity's "automated proctoring technology takes over – monitoring the test from start to finish":



30.    Examity advertises its "premium" auto-proctoring as maintaining "the same authentication stages as our Automated Standard solution," capturing "audio, motion, and systematic changes."  Further, "once the proctoring session is complete, Automated Premium provides an additional level of scrutiny" with a human audit reviewing "all AI-related findings":



31.    Examity elaborates on what types of "abnormal test-taking behaviors" its automated proctoring technology captures.  In an FAQ, Examity asks: "Can you offer examples of typical behavior that is flagged?"  Examity answers: "With so many test-takers completing exams in their homes, a common flag scenario is that of a small child walking into a room where an exam is taken."  Examity also makes clear that its software, not a live proctor, flags violations, stating that "[o]nce the exam is complete, our auditing team will provide a second review of the exam and edit, *or apply additional flags if appropriate*."

//

//

//

//



32. Defendant's "auto authentication" process captures, collects, and possesses a test-taker's biometric data. The "auto authentication" process uses biometric facial recognition to identify a test-taker by comparing an identification card's photograph with a contemporaneous photograph. On information and belief, the "auto authentication" feature performs facial recognition by extracting biometric identifiers from the subject photographs of the test taker's face

and comparing those biometric identifiers for a match. This process, as the name implies, is done automatically (*i.e.*, without human intervention). The "auto authentication" process, as Defendant represents, is offered with its "automated standard" and "automated premium" packages. Accordingly, when using either automated process, Defendant captures, collect, and possesses a student's biometric data.

33.     Defendant's automated proctoring technology also captures, collects, and possesses a test-taker's biometric data. Defendant represents that its "AI-related findings" include "audio, motion, and systemic changes." As Defendant's FAQ section states, this includes the capacity to differentiate between people in a room. BIPA covers technology that captures, collects, or possesses "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and technology based on these identifiers that is "used to identify an individual." 740 ILCS 14/10.

34.     By employing technology that "captures audio, motion, and systemic changes" in a way that can differentiate and distinguish between "a small child walking into the room" and the test-taker, Defendant captures, collects, and possesses a test-taker's biometric information. Defendant's automated proctoring technology is offered with its "automated standard" and "automated premium" packages. Accordingly, when using either automated process, Defendant captures, collects and possesses a student's biometric data.

35.     For its live-proctoring services, Examity also provides "standard" and "premium" services.

//

//

//

//

36.     For its standard live-proctoring, as published in August 2020, Examity represents that its "AI -technology will monitor the exam for any unusual activity":



37.     Upon information and belief, Defendant uses the same "AI-technology" for live standard proctoring as it does for its automated proctoring.  Thus, by employing technology that "captures audio, motion, and systemic changes" in a way that can differentiate and distinguish between "a small child walking into the room" and the test-taker, Defendant captures, collects, and possesses a test-taker's biometric data.  Defendant, by using this "AI-technology," captures, collects, and possesses a test-taker's biometric data whenever the student is taking an exam with live standard proctoring.

38.     Indeed, Defendant's Product Privacy Policy, at least as published in May 2020, verifies as much, stating that "when you use our Platform, we may collect the following

information … personal identifiers such as the student number or biometric record."  Defendant's
Product Privacy Policy defines "biometric record" as "a record of one or more measurable
biological or behavioral characteristics that can be used for automated recognition of an individual,
such as fingerprints, retina and iris patterns, voiceprints, DNA sequence, facial characteristics, and
handwriting."

      39.    The fact that Defendant collected biometric information from test takers is
reinforced by its California Resident Privacy Notice, which states "we *have collected* the following
categories of personal information from our Users within the last twelve (12) months":

In particular, we have collected the following categories of personal information from our Users within the last twelve (12) months:

| Category | Examples | Collected |
|---|---|---|
| A. Identifiers. | A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, driver's license number, passport number, or other similar identifiers. | YES |
| B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)). | A name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number. Some personal information included in this category may overlap with other categories. | YES |
| C. Protected classification characteristics under California or federal law. | Age (40 years or older), race, color, citizenship, physical or mental disability, sex (including gender, gender identity, gender expression). | YES |
| D. Commercial information. | Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies. | NO |
| E. Biometric information. | Genetic, physiological, behavioral, and biological characteristics, or activity patterns used to extract a template or other identifier or identifying information, such as fingerprints, faceprints, and voiceprints, keystroke. | YES |

- 12 -

40.     Defendant's Product Privacy Policy is silent on if, when, or how it will delete or retain Plaintiffs' or the Classes' biometric identifiers or biometric information.  In other words, it lacks a specific purpose or length of time for which Defendant will retain biometric data, and it does not publicize a retention or deletion schedule for said biometric data.

41.     Further, even if the Product Privacy Policy was sufficient (and it is not), Examity never sought or nor obtained informed written consent from Plaintiffs or the Classes before acquiring their biometric data.

42.     Examity, therefore, has failed to comply with BIPA, despite being law since 2008, and despite conducting significant business in Illinois.  Its failure is part of a larger pattern of privacy shortcomings, shortcomings that suggest Examity violated BIPA recklessly.

43.     Defendant's conduct is part of a larger pattern of virtual exam proctoring companies infringing on the privacy rights of students.

44.     Some students who took the Bar Exam, for instance, felt forced to urinate while being monitored, because if they "broke eye contact," their exams would be terminated.

45.     Other students have broken down in tears during exams, recorded on video by online proctoring companies such as Examity.

46.     Examity has been in the crosshairs of this debate.  One student, for instance, filled out security questions for an Examity proctored exam, and when he clicked on the text box, his credit card information auto-populated, making it visible to Examity's proctor.

47.     More bluntly, students have described Examity as "the creepiest thing ever," and that "the predominant feeling towards Examity is 'Screw this.'"  More generally, students have responded by publishing numerous petitions across the country, asking school administrators to cease using online proctoring tools.

48.     Experts have also bemoaned Examity's privacy shortcomings.  One security expert, for example, "believes Examity's dangers go beyond technical inconvenience":

> "It's a huge security issue for students to be required to install third-party software that they don't have the opportunity to meaningfully vet themselves, and give a stranger full remote access to their computer," Li says. "At a minimum, it sets a bad precedent and establishes dangerous security habits."
>
> Li says Examity's process is rife with potential privacy nightmares. "The proctoring software could have a security vulnerability that results in a hacker taking advantage of the remote control capabilities, the proctor could use their position of power to maliciously socially engineer the student to allow them to install malware, or the proctoring platform could leak data including student ID cards and other personal information to identity thieves."

49.     Examity codifies its seeming indifference to student privacy in its Privacy Policy. As one article editorialized:

> "Your transmission of your data to our site is thus done entirely at your own risk," [Examity's Privacy Policy] reads. That is, Examity takes no responsibility for protecting students' personal data, which they are required to provide in order to pass their classes.

50.     This indifference, coupled with student outcry and expert concern, indicates that Examity's failure to comply with BIPA's basic consent and disclosure requirements was reckless.

51.     Put together, in direct violation of BIPA § 15(b), from at least approximately January 2020 through present, Defendant never sought or obtained informed written consent from Illinois students, including Plaintiffs, before collecting their biometric identifiers or biometric information, and never informed Illinois students, including Plaintiffs, who had their facial geometry collected of the length of time or specific purpose for which their biometric identifiers or biometric information would be collected, stored and used.

52.     Moreover, in direct violation of § 15(a) of BIPA, from at least approximately January 2020 through the present, Defendant did not have written, publicly available policies

identifying its retention schedules or guidelines, and has continued to retain the biometric data beyond the intended purpose for collection.

### III.    Experience of Plaintiff Christine Rodriguez

53.    Plaintiff Rodriguez is an Illinois domiciliary.  Between January 2020 and July 2021, Plaintiff Rodriguez used Examity to take online exams in Illinois while enrolled at Olivet Nazarene University.

54.    Olivet Nazarene University is a private university located in Bourbonnais, Illinois.

55.    When Plaintiff Rodriguez used Examity, her biometric data, including her facial geometry, eye movements, and facial expressions, were collected by Defendant in Illinois.

56.    Upon information and belief, Defendant utilized its AI software to monitor Plaintiff Rodriguez while she took her exams.  Live proctors intervened during Plaintiff Rodriguez's testing sessions as a result of movement, speech, or eye gaze.  These interventions did not occur spontaneously.  They have occurred after a substantial lapse of time and, crucially, after the interrupting event has passed, indicating that AI software aids in detection.  Examity employees have also instructed Plaintiff Rodriguez to keep her eyes fixed on the screen during test administration.  The only reasonable conclusion is that Examity uses AI-supported proctoring to monitor Olivet Nazarene University students.

57.    Plaintiff Rodriguez never signed a written release allowing Defendant to collect or store her biometric data.  Nor did Defendant inform Plaintiff Rodriguez of the specific length of time that it intended to collect, store, and use her biometric data, or provide Plaintiff Rodriguez access to a retention schedule and guidelines for permanently destroying her biometric data.

58.    Upon information and belief, Examity continues to retain Plaintiff Rodriguez's biometric data beyond the intended purpose for collection and has not deleted her biometric data.

59.     Thus, when Plaintiff Rodriguez provided her biometric data to Defendant in Illinois, Defendant collected said biometric data in violation of BIPA §§ 15(a) and 15(b).

**IV.     Experience of Plaintiff Amber Mich**

60.     Amber Mich is an Illinois domiciliary.  Plaintiff Mich took two exams in Illinois proctored by Examity: one in December 2020 and one more in March 2021.  Plaintiff Mich's exams were taken while she was a student at Northwestern University.

61.     Northwestern University is a private university located in Evanston, Illinois.

62.     When Plaintiff Mich used Examity, her biometric data including her face geometry, eye movements, and facial expressions, were collected by the Defendant in Illinois.

63.     The exams completed by Plaintiff Mich utilized Examity's "auto-authentication" function, and she was required to present a photo identification to her computer's webcam while using the Examity software.  She was also required to submit herself for a photograph such that Examity could authenticate her identity as compared to the photo identification.

64.     As part of the auto-authentication feature, Plaintiff Mich was required to create a "profile" with Examity.

65.     Upon information and belief, Defendant utilized its AI software to monitor Plaintiff Mich while she completed her exams.  Prior to the exam she was instructed remain in her seat and to keep her eyes on the computer.

66.     Plaintiff Mich never signed a written release allowing Defendant to collect or store her biometric data.  Nor did Defendant inform Plaintiff Mich of the specific length of time that it intended to collect, store, and use her biometric data, or provide Plaintiff Mich access to a retention schedule and guidelines for permanently destroying her biometric data.

67. Upon information and belief, Examity continues to retain Plaintiff Mich's biometric data beyond the intended purpose for collection and has not deleted her biometric data.

68. Thus, when Plaintiff Mich provided her biometric data to the Defendant in Illinois, Defendant collected said biometric data in violation of BIPA §§ 15(a) and 15(b).

## CLASS ALLEGATIONS

69. **Class Definition:** Plaintiffs seeks to represent a class of similarly situated individuals defined as all Illinois residents who used Examity from January 2020 through the present to take an exam online and who had their biometric data collected, captured, received, or otherwise obtained and/or stored by Defendant (the "Class").

70. Plaintiff Rodriguez seeks to represent a subclass of similarly situated individuals, defined as follows (the "Olivet Nazarene Subclass"):

> All Illinois residents who took online exams at Olivet Nazarene University from January 2020 through present and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

71. Plaintiff Mich seeks to represent a subclass of similarly situated individuals, defined as follows (the "Northwestern Subclass"):

> All Illinois residents who took online exams at Northwestern University from January 2020 through the present and who had their facial geometry collected, captured, received, or otherwise obtained and/or stored by Defendant.

72. Collectively, the Class and the Olivet Nazarene and Northwestern Subclasses shall be known as the "Classes."

73. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

74. **Numerosity:** At this time, Plaintiffs do not know the exact number of members of the aforementioned Classes. However, given the size of Defendant's business and the number of Illinois-based universities that Defendant contracts with, the number of persons within the Classes is believed to be so numerous that joinder of all members is impractical.

75. **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

> (a) whether Defendant collected or otherwise obtained Plaintiffs' and the Classes' biometric identifiers and/or biometric information;
>
> (b) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;
>
> (c) whether Defendant destroyed Plaintiffs' and the Classes' biometric identifiers and/or biometric information once that information was no longer needed for the purpose for which it was originally collected; and
>
> (d) whether Defendant's violations of BIPA were committed intentionally, recklessly, or negligently.

76. **Typicality:** Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, used Examity to take an online exam, and had their biometric data recorded and improperly stored by Defendant in violation of BIPA.

77. **Adequate Representation:** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the

Classes. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Classes, to include additional claims as may be appropriate, or to amend the definition of the Classes to address any steps that Defendant took.

78. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

**COUNT I – FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15(A)**

79. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

80. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

81. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) develop a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); (ii) make that written policy publicly available, and (iii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

82. Defendant failed to comply with these BIPA mandates.

83. Defendant is a corporation that does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

84. Plaintiffs are individuals who had their "biometric identifiers" captured and/or collected by Defendant, as explained in detail in above. *See* 740 ILCS 14/10.

85. Plaintiffs' biometric identifiers were used to identify Plaintiffs and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

86. Defendant failed to establish a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

87. On information and belief, Defendant maintains custody and control of the biometric data it possesses on its servers.

88. Defendant obtained and stored Plaintiffs' and the Classes' biometric identifiers and biometric information, yet lacked retention schedules and guidelines for permanently destroying their biometric data. On information and belief, Defendant has not, and will not, destroy Plaintiffs' and the Classes' biometric data when the initial purpose for collecting or obtaining such data has been satisfied.

89.     On behalf of themselves and the Classes, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Classes by requiring Defendant to comply with BIPA's requirements for the collection, capture, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II – FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/15(B)**

90.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

91.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

92.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data.  Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b) (emphasis added).

93.     Defendant failed to comply with these BIPA mandates.

94.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

95.     Plaintiffs and the Classes are individuals who have had their "biometric identifiers" collected and/or captured by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

96.     Plaintiffs' and the Classes' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

97.     Defendant systematically and automatically collected, captured, used, and stored Plaintiffs' and the Classes' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

98.     Defendant never informed Plaintiffs, and never informed any member of the Classes, in writing of the specific length of term for which their biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(2).

99.     Defendant failed to inform Plaintiffs and the Classes in writing that their biometric identifiers and/or biometric information were being collected and stored in violation of 740 ILCS 14/15(b)(1).

100.    By collecting, capturing, storing, and/or using Plaintiffs' and the Classes' biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Classes' rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA.  *See* 740 ILCS 14/1, *et seq*.

101.    On behalf of themselves and the Classes, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Classes by requiring Defendant to comply with BIPA's requirements for the collection, captures, storage,

use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

(b) For an order declaring the Defendant's conduct, as set out above, violates BIPA;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

(e) For injunctive and other equitable relief as is necessary to protect the interests of the Classes, including an Order requiring Defendant to collect,

store, and use biometric identifiers or biometric information in compliance

with BIPA;

(f)     For pre- and post-judgment interest on all amounts awarded, to the extent

allowable;

(g)     For an order awarding Plaintiffs and the Classes their reasonable attorneys'

fees and expenses and costs of suit;

(h)     For such other and further relief as equity and justice may require.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all issues so

triable.

Dated: September 3, 2021                    Respectfully submitted,

*/s/ Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie*
Max S. Roberts*
888 Seventh Avenue, Third Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
Email: aleslie@bursor.com
        mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Avenue, Suite 1420
Miami, FL 33131

Telephone: (305) 330-5512
Facsimile: (305) 679-9006
Email: creilly@bursor.com

**EDELSON PC**
Benjamin H. Richman
Ari J. Scharg
J. Eli Wade-Scott
Schuyler Ufkes
350 North LaSalle Street, Suite 1400
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile:  (312) 589-6378
Email: brichman@edelson.com
           ascharg@edelson.com
           ewadescott@edelson.com
           sufkes@edelson.com

**CARNEY BATES AND PULLIAM, PLLC**
Randall K. Pulliam*
David F. Slade*
519 West 7th Street
Little Rock, AR 72201
Telephone: (501) 312-8500
Email: rpulliam@cbplaw.com
           dslade@cbplaw.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs and the Putative Classes*